UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BAMBOO IDE8 INSURANCE SERVICES, LLC, an Arizona limited liability company,<br><br>Plaintiff,<br><br>-against-<br><br>EVERETT CASH MUTUAL INSURANCE COMPANY, a Pennsylvania Corporation,<br><br>Defendant. | Civil Case No. _____<br><br>**COMPLAINT<br>AND JURY DEMAND**<br><br>**FILED UNDER SEAL:<br>REDACTED** |

Plaintiff Bamboo Ide8 Insurance Services, LLC ("Bamboo") hereby alleges and complains against Defendant Everett Cash Mutual Insurance Company ("ECM") as follows:

## NATURE OF THE ACTION

1. In early 2022, Bamboo developed a plan to purchase certain valuable ▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ from various subsidiaries of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (collectively and together ▮▮▮▮▮▮▮, the "Selling Insurers") and submitted a proposal to the Selling Insurers outlining the transfer of the ▮▮▮▮▮▮▮ to Bamboo, which was accepted.

2. In May 2022, Bamboo approached ECM as a potential partner in its planned acquisition of the ▮▮▮▮▮▮▮ and ECM committed to finance a portion of Bamboo's purchase price.

3. Over the ensuing months, as Bamboo and the Selling Insurers worked toward the consummation of the planned transfer, ECM was included as a collaborative partner in the parties' discussions.

4.  Bamboo, the Selling Insurers, and ECM ultimately planned to finalize the transfer of the ▇▇▇ on Friday, August 5, 2022, with the parties signing the operative transactional documents ("August 5th Signing").

5.  On the day of the August 5th Signing, with the parties hours away from exchanging signatures, ECM abruptly called off the deal. No explanation was provided for the abrupt and last-minute change of course.

6.  On Monday, August 8, 2022, ECM publicly announced that it had agreed with the Selling Insurers to directly acquire the ▇▇▇ that the parties had intended to be transferred to Bamboo ("August 8th Transaction").

7.  With this announcement, it became clear that ECM intentionally refused to sign the operative transactional documents on August 5, 2022 in order to pull funding from Bamboo, thus pressuring the Selling Insurers over the ensuing weekend to sell the ▇▇▇ directly to ECM at a better price.

8.  Due to ECM's commitment up to the day of the August 5th Signing that it would finance a portion of Bamboo's purchase price, there was no opportunity for Bamboo to obtain separate financing to compete with ECM's approach to the Selling Insurers over the ensuing weekend that resulted in the August 8th Transaction.

9.  Both in deciding to negotiate with the Selling Insurers (separate and apart from Bamboo) regarding the ▇▇▇, and in finalizing the August 8th Transaction, ECM improperly appropriated Bamboo's work, including but not limited to Bamboo's due diligence with respect to the ▇▇▇, for its own use.

10. As a direct result of ECM's intentional and improper conduct, Bamboo has suffered damages in that it has been denied the benefit it would have received had it acquired the ▇▇▇

███ and has further been denied the value of its extensive work connected with the transfer of the ███████. Bamboo therefore brings this action for (1) Tortious Interference with Prospective Contractual Relations, (2) Unfair Competition – Misappropriation of Labors and Expenditures, (3) Unjust Enrichment, and (4) Promissory Estoppel.

## THE PARTIES

11. Bamboo is an Arizona limited liability company, having its principal place of business in Midvale, Utah.

12. ECM is a Pennsylvania corporation.

## JURISDICTION AND VENUE

13. The matter in controversy in this action exceeds the sum or value of $75,000.00, exclusive of interest and costs.

14. As alleged above, there is complete diversity between the parties in this action. There are no individual members or ultimate beneficial owners of Bamboo that are domiciled in or citizens of Pennsylvania.

15. Original jurisdiction of this action is proper under 28 U.S.C. § 1332(a)(2) based on diversity of citizenship.

16. ECM is subject to this Court's personal jurisdiction because ECM has conducted business in this District, including, for instance, participating in the only in-person meetings between the parties regarding matters at issue herein.

17. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2).

## GENERAL ALLEGATIONS

18. As early as November 2021, Bamboo became aware that the Selling Insurers were

considering selling the ▮▮▮▮.

19. In early 2022, Bamboo submitted a proposal to the Selling Insurers to purchase the ▮▮▮▮, setting forth an outline for the purchase of the ▮▮▮▮, with additional terms to be subsequently agreed upon.

20. The Selling Insurers accepted Bamboo's outlined proposal and Bamboo and the Selling Insurers initiated further discussions to finalize the transfer of the ▮▮▮▮ to Bamboo (the "Transaction Discussions").

### *ECM Becomes Involved as a Financer*

21. In connection with the Transaction Discussions, Bamboo collaborated with ECM in the anticipated transfer of the ▮▮▮▮ to Bamboo.

22. In particular, from May 2022 until the day of the August 5th Signing, ECM represented to Bamboo that it would finance a portion of the ▮▮▮▮ purchase price. Specifically, ECM initially committed to loan Bamboo $▮▮▮▮ in connection with the August 5th Signing, which amount was ultimately reduced to $▮▮▮▮. Moreover, ECM committed to contribute an additional $▮▮▮▮ toward Bamboo's purchase of the ▮▮▮▮ in exchange for the exclusive right to reinsure policies under the ▮▮▮▮. The combined funds that ECM promised to contribute toward the purchase of the ▮▮▮▮ is referred to herein as the "ECM Financing Commitment."

23. As the August 5th Signing drew nearer, Bamboo's ability to timely secure alternative financing to that of the ECM Financing Commitment dwindled until it finally evaporated and Bamboo became completely reliant on ECM to timely effectuate the anticipated transfer of the ▮▮▮▮.

4

### *Work Product*

24. In furtherance of the Transaction Discussions, Bamboo shared highly sensitive information with ECM related to its operations and business plan for securing the ▮▮▮ as the two worked collaboratively on the ultimate transfer of the ▮▮▮ to Bamboo.

25. In particular, Bamboo conducted extensive due diligence of the ▮▮▮, designed a communication plan and process for the anticipated transfer of ▮▮▮, prepared extensive transactional documentation to effectuate the transfer of the ▮▮▮, and provided significant assistance with respect to transferring and repurposing technology and improving the ▮▮▮ business going forward. Such extensive work was shared with ECM and is referred to herein as "Bamboo's Work Product."

26. ECM relied on and misappropriated Bamboo's Work Product both in deciding whether to negotiate directly with the Selling Insurers to independently purchase the ▮▮▮ separate and apart from Bamboo and in consummating the August 8th Transaction.

### COUNT I
### (Tortious Interference with Prospective Contractual Relations)

27. Bamboo restates and incorporates herein all of the foregoing allegations.

28. Bamboo had a business relationship with the Selling Insurers following the Selling Insurer's acceptance of Bamboo's outlined proposal to purchase the ▮▮▮.

29. ECM was aware of Bamboo's business relationship with the Selling Insurers.

30. By repudiating the ECM Financing Commitment on the day of the August 5th Signing when it would be too late for Bamboo to secure alternative funding, and then pursuing a counter-proposal with the Selling Insurers over the ensuing weekend that relied on and misappropriated Bamboo's Work Product, ECM used dishonest, unfair, or improper means to intentionally interfere with Bamboo's business relationship with the Selling Insurers.

31. Such behavior violates established standards of business ethics and industry standards and constitutes improper means that resulted in the actual disruption of the Selling Insurers' commitment to sell the ▉▉▉▉ to Bamboo.

32. ECM's interference caused injury to Bamboo's business relationship with the Selling Insurers and resulted in extensive monetary damages in that Bamboo was unable to consummate the transfer of the ▉▉▉▉ and was denied the benefits therefrom that it otherwise would have received.

**COUNT II**
**(Unfair Competition – Misappropriation of Product of Labors and Expenditures)**

33. Bamboo repeats and realleges each of the foregoing allegations as if fully set forth herein.

34. Bamboo's Work Product is the result of Bamboo's labor, skill, and monetary expenditures and represents a significant investment of hundreds of hours of contribution by Bamboo's internal and external legal and business teams.

35. ECM relied on Bamboo's Work Product in deciding whether to negotiate independently with the Selling Insurers with respect to the transfer of ▉▉▉▉ to ECM.

36. ECM relied on Bamboo's Work Product in consummating the August 8th Transaction.

37. By relying on Bamboo's Work Product in deciding whether to negotiate independently with the Selling Insurers with respect to the transfer of ▉▉▉▉ and in consummating the August 8th Transaction, ECM misappropriated the product of Bamboo's labor, skill, and expenditures.

38. ECM acted in bad faith by, for instance, intentionally waiting until the day of the August 5th Signing to pull the ECM Financing Contribution, thus giving ECM an unfair

competitive advantage over Bamboo. ECM proceeded to act in bad faith by finalizing the August 8th Transaction over the ensuing weekend when Bamboo would be unable to secure alternative funding.

39. Bamboo has suffered damages in that it has not been compensated for Bamboo's Work Product.

## COUNT III
### (Unjust Enrichment)

40. Bamboo restates and incorporates herein all of the foregoing allegations.

41. ECM's use of Bamboo's Work Product in deciding whether to negotiate independently with the Selling Insurers with respect to the transfer of the ▓▓▓▓▓▓▓▓ to ECM conferred a tremendous benefit on ECM.

42. ECM's use of Bamboo's Work Product in finalizing the August 8, 2022 Transaction conferred a tremendous benefit on ECM.

43. ECM was aware of these benefits and accepted and retained the same.

44. ECM was enriched by its use of Bamboo's Work Product at Bamboo's expense.

45. Bamboo has never been compensated for ECM's use of Bamboo's Work Product.

46. It would be inequitable and against good conscience under the circumstances set forth herein for ECM to accept and retain the benefit it received from its use of Bamboo's Work Product without payment of its value to Bamboo.

## COUNT IV
### (Promissory Estoppel)

47. Bamboo restates and incorporates herein all of the foregoing allegations.

48. From May 2022 until the day of the August 5th Signing, ECM represented to Bamboo that it was willing to contribute the ECM Financing Commitment toward Bamboo's

purchase of the ███████.

49. The ECM Financing Commitment constituted a clear and unambiguous promise that became increasingly concrete as the August 5th Signing approached.

50. The ECM Financing Commitment was never withdrawn until the day of the August 5th Signing, hours before the parties were to exchange signatures.

51. Bamboo acted with reasonable and foreseeable reliance and prudence on the ECM Financing Commitment in foregoing alternative financing opportunities leading up to the August 5th Signing.

52. ECM knew that Bamboo had relied on the ECM Financing Commitment, which ECM should have reasonably expected to induce action or forbearance on Bamboo's part.

53. ECM suffered injury by relying on the ECM Financing Commitment in that when ECM repudiated the ECM Financing Commitment on the day of the August 5th Signing, Bamboo did not have an opportunity to secure alternative financing to compete with ECM's pursuit of an independent deal with the Selling Insurers the ensuing weekend and the consummation of the August 8th Transaction.

54. As a result of ECM's failure to honor the ECM Financing Commitment, Bamboo suffered damages in that it was denied the benefits it would have otherwise received from the transfer of the ███████.

## JURY DEMAND

Bamboo respectfully demands a trial by jury as to all issues so triable.

## DEMAND FOR RELIEF

**WHEREFORE**, Bamboo respectfully requests that this Court enter judgment in its favor on all counts of this Complaint and grant Bamboo the following relief:

1. For full compensatory damages, including, but not necessarily limited to, the full amount of profit that Bamboo would have received from the transfer of the ▬▬▬▬ to Bamboo had such transfer occurred, in an amount to be proved at trial, but believed to be greater than $75,000;

2. For full reimbursement from ECM related to its use of Bamboo's Work Product;

3. For punitive damages sufficient to dissuade ECM and companies in analogous positions to that of ECM from attempting to undertake similar improper actions;

4. For pre- and post-judgment interest;

5. For an award of reasonable attorneys' fees and costs to the extent allowed by law; and

6. For such other and further relief as may be deemed just, equitable, or proper.

Dated: New York, New York
January 10, 2023

By: _____
Deborah H. Renner
Sara Gates
DENTONS US LLP
1221 Avenue of the Americas
New York, NY 10020-1089
Tel. (212) 398-4871
deborah.renner@dentons.com
sara.gates@dentons.com

Timothy O. Hemming
*Pro Hac Vice (forthcoming)*
DENTONS DURHAM JONES PINEGAR P.C.
192 East 200 North, 3rd Floor
St. George, UT 84770
Tel. (435) 674-0400
tim.hemming@dentons.com

*Attorneys for Plaintiff Bamboo Ide8 Insurance Services, LLC*